IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

FLORENDA BROWN,

    Plaintiff,

v.                                                                                       CASE NO. 1:10-cv-58-MMP-GRJ

MICHAEL J ASTRUE, Commissioner
of Social Security,

    Defendant.

_____/

**REPORT AND RECOMMENDATION**

        Plaintiff appeals from a final decision of the Commissioner of Social Security ("the Commissioner") denying her applications for a period of disability and disability insurance benefits. (Doc. 1).   The Commissioner has answered (Doc. 9), and both parties have filed briefs outlining their respective positions. (Docs. 15 & 18). For the reasons discussed below, it is recommended that the Commissioner's decision be affirmed.

**I.  PROCEDURAL HISTORY**

        Plaintiff filed an application for disability benefits on November 16, 1999, alleging a disability onset date of December 10, 1998, due to arthritis, depression, and back pain. (R.11.)  Plaintiff's application was denied initially and upon reconsideration.  (R. 22-23).  Plaintiff petitioned for a hearing before an administrative law judge (ALJ), who conducted a hearing on April 23, 2002, and entered an unfavorable decision on September 9, 2002. (R.435-40.)  The Appeals Council denied Plaintiff's request for

review on June 4, 2004 (R.5-7.) Plaintiff then filed a complaint for judicial review. On motion of the Commissioner, this Court entered an order on November 19, 2004, remanding the case to the ALJ for a new hearing because the tape recording of the April 23, 2002 hearing was inaudible. (R.445-453.) Following a second administrative hearing on April 18, 2006,(R.882) the ALJ entered an unfavorable decision on July 27, 2006. (R.882-891.) Plaintiff filed a complaint for judicial review. On motion of the Commissioner, this Court entered an order on April 13, 2007, remanding the case to the ALJ for consideration of whether Plaintiff could perform work available in significant numbers in the national economy and to evaluate Plaintiff's substance abuse. (R.892-96.). A third hearing was conducted on November 20, 2007, and the ALJ entered an unfavorable decision on January 17, 2008 (R.940-52). The Appeals Council remanded the case to obtain additional testimony from a vocational expert to determine whether work existed in the national economy that Plaintiff could perform within her assessed residual functional capacity. (R.958-59).

A fourth hearing was conducted on September 29, 2009, and the ALJ entered an unfavorable decision on December 8, 2009. (R.856-67). This action followed.

## II. STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence.[1] Substantial evidence is more than a scintilla, i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such

---

[1] *See* 42 U.S.C. § 405(g) (2000).

relevant evidence as a reasonable person would accept as adequate to support the conclusion.[2]

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.[3] The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.[4] However, the district court will reverse the Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law.[5]

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death, or has lasted or can be expected to last for a continuous

---

[2] Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982) and Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971)); accord, Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

[3] Edwards, 937 F.2d at 584 n.3; Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).

[4] Foote, 67 F.3d at 1560; accord, Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (holding that the court must scrutinize the entire record to determine reasonableness of factual findings); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (finding that the court also must consider evidence detracting from evidence on which the Commissioner relied).

[5] Keeton v. Dep't Health and Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994).

period of not less than twelve months.[6]  The impairment must be severe, making Plaintiff unable to do his previous work, or any other substantial gainful activity which exists in the national economy.[7]

The ALJ must follow five steps in evaluating a claim of disability.[8]  First, if a claimant is working at a substantial gainful activity, he is not disabled.[9]  Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, then he does not have a severe impairment and is not disabled.[10]  Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is disabled.[11]  Fourth, if a claimant's impairments do not prevent him from doing past relevant work, he is not disabled.[12]  Fifth, if a claimant's impairments (considering his residual functional capacity ("RFC"), age, education, and past work) prevent him from

---

[6] 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505 (2005) (All further references to 20 C.F.R. will be to the 2005 version unless otherwise specified.).

[7] 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

[8] 20 C.F.R. §§ 404.1520, 416.920. The claimant has the burden of proving the existence of a disability as defined by the Social Security Act. Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991).

[9] 20 C.F.R. § 404.1520(b).

[10] 20 C.F.R. § 404.1520(c).

[11] 20 C.F.R. § 404.1520(d).

[12] 20 C.F.R. § 404.1520(e).

doing other work that exists in the national economy, then he is disabled.[13]

The burden of proof regarding the plaintiff's inability to perform past relevant work initially lies with the plaintiff.[14] The burden then temporarily shifts to the Commissioner to demonstrate that "other work" which the claimant can perform currently exists in the national economy.[15] The Commissioner may satisfy this burden by pointing to the Medical-Vocational Guidelines (the "Grids") for a conclusive determination that a claimant is disabled or not disabled.[16]

However, the ALJ should not exclusively rely on the Grids when "the claimant has a non-exertional impairment which significantly limits his or her basic work skills or when the claimant cannot perform a full range of employment at the appropriate level of

---

[13] 20 C.F.R. § 404.1520(f).

[14] Walker v. Bowen, 826 F.2d 996, 1002 (11th Cir. 1987); *see also* Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001).

[15] Doughty, 245 F.3d at 1278 n.2. In Doughty the court explained this burden shifting as follows:

> In practice, the burden temporarily shifts at step five to the Commissioner. The Commissioner must produce evidence that there is other work available in significant numbers in the national economy that the claimant has the capacity to perform. In order to be considered disabled, the claimant must then prove that he is unable to perform the jobs that the Commissioner lists. The temporary shifting of the burden to the Commissioner was initiated by the courts, and is not specifically provided for in the statutes or regulations.) (Internal citations omitted).

[16] Walker, 826 F.2d at 1002 ("[T]he grids may come into play once the burden has shifted to the Commissioner to show that the claimant can perform other work.").

exertion."[17]  In a situation where both exertional and non-exertional impairments are found, the ALJ is obligated to make specific findings as to whether they preclude a wide range of employment.[18]

The ALJ may use the Grids as a framework to evaluate vocational factors so long as he introduces independent evidence of the existence of jobs in the national economy that the claimant can perform.[19]  Such independent evidence may be introduced by a Vocational Expert's ("VE") testimony, but this is not the exclusive means of introducing such evidence.[20]  Only after the Commissioner meets this burden does the burden shift back to the claimant to show that he or she is not capable of performing the "other work" as set forth by the Commissioner.

### III.  SUMMARY OF THE RECORD

The Plaintiff challenges the ALJ's assessment of her residual functional capacity as it related to her mental health impairments because the ALJ gave the opinions of nurse practitioner Angela White and psychologist Michael Zelenka, Ph.D. limited weight.  Plaintiff also challenges the ALJ's asserted failure to pose a hypothetical to the VE that included all limitations stemming from Plaintiff's mental health impairments.

---

[17] Wolfe v. Chater, 86 F.3d 1072, 1077 ( 11th Cir. 1996). *See* Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999); Walker, 826 F.2d at 1003 ("The grids may be used only when each variable on the appropriate grid accurately describes the claimant's situation.").

[18] Walker, 826 F.2d at 1003.

[19] Wolfe, 86 F.3d at 1077-78.

[20] *See id.*

Therefore, the Court will focus its discussion of the record on those issues, as to the relevant time period for which benefits are claimed.

## A. Personal Background

Plaintiff was 45 years old at the time of the fourth hearing and decision. (R.866, 557.) She completed high school and has past relevant work as a cashier and clerk (R.884-85, 874.) The Plaintiff has not engaged in substantial gainful activity since her alleged onset date of December 10, 1998 (R.551.)

## B. Record Relating to Mental Impairments

Plaintiff entered treatment at Meridian Behavioral Health Care on December 18, 1998, with a primary complaint of alcohol, crack, and marijuana dependance in addition to mental health issues. She came to Meridian from Shands at Vista, where she had been in detox for approximately 8 days. (R.160). Plaintiff reported using crack cocaine 4 to 5 times per month and smoking a bag of marijuana per month. (R.162). She was referred to residential treatment for cocaine, alcohol, and marijuana dependencies, with the alcohol dependency in partial remission. (R.161).

On October 28, 1999, Plaintiff was again admitted to Shands at Vista. Her discharge summary of November 2, 1999 revealed that she had been a prior patient at Shands at Vista and had a history of depression, addiction, and polysubstance abuse. She presented as withdrawn and disorganized with marked psychomotor retardation and poor concentration. She was taking Wellbutrin but reported it was not effective. Upon discharge from Shands at Vista, Plaintiff reported that the suicidal ideation that prompted her to voluntarily admit herself was no longer present. (R.98).

A December 10, 1999 visit to Shands at UF Clinic indicated Plaintiff's depression was well controlled on Effexor and she had been sober for one year. (R.172).

Plaintiff received psychotherapy from Dr. Philip K. Springer from February to October 2000. (R.230-256). An October 4, 2000 visit to Dr. Springer reveals that Plaintiff had been clean from street drugs for a month. Dr. Springer noted that Plaintiff's mental health appeared to be higher than she reported. (R.230-31).

Consultative psychologist Michael Zelenka, Ph.D. reviewed Plaintiff's medical records on April 5, 2000, noting affective disorder and substance abuse disorder. (R.197). Dr. Zelenka found that Plaintiff had no restrictions on her activities of daily living and no difficulties in maintaining social functioning but with frequent deficiencies in concentration or pace resulting in failure to complete tasks in a timely manner. (R.204). His mental residual functional capacity assessment indicated that Plaintiff had no significant limitations in most areas but did have moderately limited ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. (R.206-07). His notes indicated that despite Plaintiff's depression she was going to school, working, taking the bus to work, caring for her home and two children, and doing all chores. (R.221).

On November 13, 2000, consultative psychologist T. Wayne Conger, Ph.D. reviewed Plaintiff's medical records and completed a mental residual functional capacity assessment. (R.265-279). He found that she had no limitations in activities of daily living, maintaining social functioning, or with repeated, extended episodes of

decompensation. (R.275). Dr. Conger noted mild limitations in maintaining concentration, persistence, or pace. (R.275). He concluded that "there is no indication of a severe mental impairment." (R.277).

Notes from an April 2, 2002 visit to Shands Park Avenue Internal Medicine Clinic indicate that Plaintiff was hospitalized in December 2001 for chest pain and crack cocaine use. (R.279). She reported that she had not used alcohol or drugs since that time. (R.279).

On July 12, 2002, Plaintiff reestablished treatment at Meridian Behavioral Healthcare. (R.711). Her intake evaluation indicated that when she had left over money from her bills each month, she would use crack cocaine. (R.712). In January 2003, notes from Meridian stated that Plaintiff "has made very little progress due to noncompliance with keeping her appointments." (R.687). Her noncompliance continued, and between June 2003 and January 2004 she failed to attend any of her scheduled appointments. (R.656-668).

Nurse practitioner Angela White, Ph.D., of Meridian Behavioral Healthcare completed a mental residual capacity assessment of Plaintiff on June 8, 2004. (R.482-484). Dr. White opined that Plaintiff had extreme limitations with regard to her ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. (R.482). Dr. White noted marked limitations in most other areas of mental functioning. (R.482-484).

On January 29, 2004, Plaintiff saw Dr. Melanie Hagen at Shands at UF Clinic.

(R.606). The notes from this visit reveal that Plaintiff had stopped taking her bipolar medication six months prior and was smoking marijuana daily, though she continued to work as a telemarketer. (R.606). On May 7, 2004, notes from Plaintiff's visit to Dr. Hagen at Shands at UF Clinic disclose that Plaintiff was still smoking marijuana daily and appeared hypomanic upon examination. (R.603).

On May 22, 2004, Plaintiff was involuntarily admitted to Shands at Vista pursuant to the Baker Act after overdosing on crack cocaine. (R.622). Upon admission, Plaintiff stated that she still had suicidal intentions. (R.622). The day following admission, Plaintiff denied suicidal ideation but admitted to auditory hallucinations. (R.622). After 3 days of hospitalization, Plaintiff was released. (R.623).

On July 22, 2004, Plaintiff saw Dr. Hagen at Shands at UF Clinic. Dr. Hagen noted that Plaintiff had been hospitalized at Vista for acute mania as well as alcohol and cocaine detoxification. (R.601). Plaintiff said she had avoided drugs and alcohol since being released from the hospital. (R.601).

Dr. Jose Llinas, a treating psychiatrist at Meridian Behavioral Healthcare, opined in November 2004 that Plaintiff did not have a seriously impaired memory, had poor judgment, was antisocial, "not able to keep a job due to agitation" and "not able to be socially interacting for long." (R.782-83).

Consultative psychologist Bernie Marrero, Ph.D., examined Plaintiff on December 1, 2004. (R.824). He noted that Plaintiff did not report hallucinations until specifically asked about them, at which time she reported seeing a piranha under a chair for an hour. (R.827). He concluded that Plaintiff had bipolar disorder, personality

disorder, and unresolved polysubstance abuse with an inability to remain employed. (R.827-28). Dr. Marrero recommended continued treatment at Meridian for compliance with medications. (R.827). His prognosis for Plaintiff was guarded to poor and contingent on her ability to be stabilized with the appropriate psychotropic medications. (R.827).

In January 2005, state agency consultant Mark A. Williams, Ph.D., completed a mental residual functional capacity assessment. He opined that Plaintiff had a serious substance abuse problem but that with sustained sobriety and nutritional stability her psychological condition and overall functioning would improve. (R.812). He also opined that with sobriety, her capabilities should be adequate to work on a substantial gainful activity level. (R.812). Dr. Williams' mental residual functional capacity assessment, which assumed sobriety, indicated that she had moderately limited ability to understand and remember detailed instructions; carry out detailed instructions; interact appropriately with the general public; accept instructions and respond appropriately to criticism from supervisors; and set realistic goals or make plans independently of others. (R.796-97). He found no significant functional limitations in all other areas. (R.796-97).

Records from Meridian show that Plaintiff continued to receive treatment from February 2006 through October 2007. Problems with appointment and medication compliance were noted. (R.997-1009).

On February 28, 2009, Plaintiff was admitted to Shands at AGH hospital and upon discharge on March 2, 2009 was diagnosed with renal failure, anemia, chest pain,

and polysubstance abuse. (R.1140). Plaintiff's urinalysis showed positive results for cocaine and THC (marijuana). (R.1140). Plaintiff was advised that substance abuse may have contributed to her dizziness and chest pain. (R.1141).

### D.   Hearing Testimony

Plaintiff's most recent hearing occurred on September 29, 2009. At the time of the hearing, Plaintiff testified she was 45 years old and previously worked as a cashier, telemarketer, and office assistant. (R.1188). She testified that she had been "clean" from drugs and alcohol for 10 years. (R.1189). Plaintiff testified that she has bipolar disorder and cannot finish a task after starting it; isolates herself in her my apartment; and sleeps a lot during the daytime. (R.1191-92). She testified she was fired from her job at Checkers in 1998 due to excessive absences resulting from her mental health issues. (R.1194). She testified that on the days she did show up, her productivity was not good; and she was not able to complete her tasks. (R.1195-96). She testified that she has been receiving treatment with Meridian Behavioral Healthcare from 1998 to present, treating on average once a month but up twice a week if she was having suicidal thoughts. (R.1196-97). Plaintiff testified she did not want to be around too many people, her ability to concentrate was "not good at all," and a typical workday might start out good but she would eventually start slowing down and could not complete her tasks. (R.1197-99).

The ALJ posed a hypothetical to vocational expert ("VE") Jane Beougher which asked her to assume, in addition to physical restrictions, an individual who could "understand and recall simple instructions, carry out simple tasks, adequately complete

an eight-hour day," work with co-workers, and accept non-threatening supervision. (R.1206). The VE testified that a person with these limitations could perform the following jobs: survey worker (as previously performed by Plaintiff, not as described in the DOT), addressing clerk, and surveillance system monitor. The VE testified that significant numbers of these jobs exist in the national economy and in Florida. (R.1207). When asked by Plaintiff's representative to consider appropriate jobs for the same hypothetical person who also had a marked (seriously limited) ability to sustain concentration and persistence in pace and extreme (no useful) ability to complete a normal workday without interruptions, the VE testified that no jobs existed for such a person. (R.1208).

### E.   Findings of the ALJ

The ALJ found that the Plaintiff did not engage in substantial gainful activity since her alleged onset date of December 10, 1998. He found that the Plaintiff had the following severe impairments: osteoarthritis of the knees, chronic anemia, diabetes, high blood pressure, asthma, a hiatal hernia, obesity, bipolar disorder, and a substance disorder. The ALJ found that the severe impairments did not meet the Commissioner's Listings. The ALJ found that Plaintiff has the residual functional capacity to: (1) lift up to 10 pounds occasionally, (2) sit for up to 6 hours a day in an 8 hour workday, (3) stand or walk for at least 2 hours in an 8 hour workday, (4) occasionally stoop and balance, (5) understand and recall simple instructions, (6) reliably carry out simple tasks adequately enough to complete an 8 hour workday, and, (7) work with the public and co-workers in a casual setting with non-threatening supervision. The ALJ noted that

Plaintiff needed to change positions, avoid repetitive kneeling, crouching or crawling, and that her work demands should be mostly routine.  She found that Plaintiff was unable to perform any past relevant work.  Finally, the ALJ found that there are jobs that exist in significant numbers in the national economy that the Plaintiff could perform and therefore is not disabled.

## IV.  Discussion

Plaintiff argues that the ALJ erred by not giving enough weight to the residual functional capacity limitations suggested by nurse practitioner Angela White and psychologist Michael Zelenka.  Plaintiff further argues that the ALJ erred by not posing a hypothetical to the vocational expert that comprised all of Plaintiff's mental impairments.

### A.  The ALJ properly assessed the opinions of nurse practitioner Angela White, Ph.D. and state agency psychologist Michael Zelenka, Ph.D.

Plaintiff argues that the ALJ was required to give the opinion of Angela White, Ph.D., a nurse practitioner and case manager at Meridian Behavioral Healthcare, more weight because Dr. White is a treating source.  Dr. White's mental residual functional capacity assessment noted more significant limitations than other mental RFCs in the record, notably that Plaintiff has a marked inability to maintain attention and concentration and an extreme inability to complete a normal workday and work week without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods.  (R.482-84).  When asked by Plaintiff's representative to consider appropriate jobs for the same hypothetical person who also had a marked (seriously limited) ability to sustained

concentration and persistence in pace and extreme (no useful) ability to complete a normal workday without interruptions, the VE testified at the September 29, 2009 hearing that the person could not do any work. (R.1208). Thus, Plaintiff contends that if Dr. White's opinion was given more weight than non-treating sources, the mental RFC as reflected in the hypothetical questions to the VE would result in a determination by the VE that there are no jobs available for a person with Plaintiff's limitations.

Nurse practitioners are not an "acceptable medical source" who can offer medical opinions to establish an impairment. *20 C.F.R. § 404.1513.* However, the ALJ may consider evidence from nurse practitioners to show the severity of impairments or how it affects a claimant's ability to work. *Id. at § (d)(2).* In the instant case, the ALJ considered Dr. White's opinion and gave it limited weight, citing the inconsistency with other evidence and a lack of rationale provided by Dr. White. (Doc. 1-2). Accordingly, the ALJ was not required to give Dr. White's opinion controlling weight.

Plaintiff further argues that the ALJ did not assign enough weight to the opinion of state agency psychologist Michael Zelenka, Ph.D. Dr. Zelenka found that Plaintiff had no restrictions on her activities of daily living and no difficulties in maintaining social functioning but had frequent deficiencies in concentration or pace resulting in failure to complete tasks in a timely manner. (R.204). His mental residual functional capacity assessment indicated that Plaintiff had no significant limitations in most areas but did have moderately limited ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. (R.206-07). His notes

indicated that despite Plaintiff's depression she was going to school, working, taking the bus to work, caring for her home and two children, and doing all chores. (R.221).

The ALJ considered Dr. Zelenka's opinion but concluded that his opinion that Plaintiff had frequent lapses in concentration, persistence, and pace was not supported by the evidence as a whole. (Doc. 1-2). ALJs are required to consider the opinions of non-examining state agency psychologists but are not required to follow their findings. *Soc. Sec. Admin. Rul. 96-6p.* The ALJ properly articulated that Dr. Zelenka's opinion was given little weight because it was inconsistent with the evidence as a whole. For example, Dr. Marrero noted in 2004 that Plaintiff's attention/concentration and long term memory were within normal limits (R.826); Dr. Williams noted in 2005 that Plaintiff had no significant limitations in all but one area of sustained concentration and persistence (moderately limited ability to carry out detailed instructions). (R.796-77). The ALJ's review of Dr. Zelenka's opinion and decision to assign it little weight is supported by substantial evidence.

**B.     The ALJ's hypothetical accounted for Plaintiff's limitations**

Plaintiff argues that the ALJ improperly relied on VE testimony that did not adequately reflect the functional limitations associated with her mental impairments. Because the Plaintiff challenges the sufficiency of the hypothetical posed to the VE, Plaintiff also implicitly challenges the ALJ's assessment of the Plaintiff's RFC.

The burden is on the Plaintiff to show that her mental impairment significantly

limits her ability to perform basic work activities.[21]   Plaintiff points to nurse practitioner Angela White's mental residual functional capacity assessment indicating numerous marked limitations, including extreme limitations with regard to her ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods.  (R.482).   Plaintiff also points to Dr. Zelenka's opinion that Plaintiff had frequent lapses in concentration, persistence, and pace with a moderate in ability to complete a normal workday and workweek.  (R.206-07).  Plaintiff contends that "although Ms. White and Dr. Zelenka may differ on the degree of severity, the substantial evidence establishes that [Plaintiff's] ability to complete a normal days work is impaired."  (Doc. 15, p. 9).

The ALJ determined that in light of the evidence as a whole, the opinions of nurse practitioner White and Dr. Zelenka should be afforded little weight.  In particular, the ALJ found that Plaintiff's "alcohol and drug abuse has been an ongoing issue since her alleged onset date of disability.  However, apart from a few crisis episodes, [Plaintiff's] symptoms, including those associated with her bi-polar disorder, are well-managed with counseling and medications."  (Doc. 1-2).  Both the testimony of the Plaintiff and her medical records indicate that she has no limitations in activities of daily living with moderate restrictions in her social functioning and maintaining concentration,

---

[21]20 C.F.R. 404.1520(c).  Basic work activities include: "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling; seeing, hearing, and speaking; understanding, carrying out, and remembering simple instructions; use of judgment, responding appropriately to supervision, coworkers, and usual work situations; and dealing with changes in a routine work setting."  Soc. Sec. Admin. Rul. 85-28.

persistence, and pace. Her memory was not seriously impaired. Taking into account these mental limitations, which are supported by substantial evidence, the ALJ determined that during the relevant period Plaintiff retained the ability to follow at least simple instructions, get along with others, and manage her own activities.

With regard to the effects of Plaintiff's substance abuse on her disability, the ALJ concurred with the opinion of state agency consultant Mark Williams, Ph.D., who concluded that with sobriety, Plaintiff's mental health impairments would have at most moderate limitations on her ability to understand, remember, and carry out instructions and to interact with others. Consultative psychologist Bernie Marrero, Ph.D., also noted unresolved substance abuse disorders that contributed to Plaintiff's symptoms. Plaintiff testified in her 2009 hearing that she had been "clean" from drugs and alcohol for 10 years, but medical evidence indicates she has abused these substances on various occasions during that 10 year period, including as recently as seven months prior to her testimony. (R.1140-41). The ALJ determined that Plaintiff's substance abuse disorder was severe and subsequently properly assessed a mental residual functional capacity which, like that of Dr. Williams, assumed sobriety. *See 42 U.S.C. § 423(d)(2)(C) (2010).*

This Court can discern no error in the ALJ's conclusion that there is insufficient evidence to demonstrate that Plaintiff's mental conditions caused severe functional limitations. The ALJ properly assessed the medical records and considered and weighed the opinions of various medical experts who either examined or treated Plaintiff or reviewed her records. The ALJ then took into account Plaintiff's moderate

*Case No: 1:10-cv-58-MP-GRJ*

limitations when assessing her mental residual functional capacity, making allowances for her abilities to understand and recall simple instructions; carry out simple tasks adequately enough to complete an 8-hour workday; work with the public and co-workers in a casual setting; accept non-threatening supervision; and complete routine work demands. Accordingly, the record fully supports the ALJ's assessment of Plaintiff's mental residual functional capacity; these mental limitations were included in the ALJ's hypothetical to the VE; and thus, the hypothetical adequately accounted for Plaintiff's mental limitations.

## V. CONCLUSION

For the foregoing reasons, it is respectfully **RECOMMENDED** that the decision of the Commissioner denying benefits to Plaintiff be **AFFIRMED.**

**IN CHAMBERS** at Gainesville, Florida, this 3rd day of August, 2011.

*s/ Gary R. Jones*
GARY R. JONES
United States Magistrate Judge

### NOTICE TO THE PARTIES

**Pursuant to Fed. R. Civ. P. 72(b)(2), a party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 14 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**